IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEPHEN DOUGLAS DAVIDSON #362662
   Plaintiff                                    :

       v.                                     :      CIVIL ACTION NO. JFM-13-250

MARYLAND PAROLE COMMISSION     :
  Defendant

## MEMORANDUM

On January 24, 2013, plaintiff Stephen Davidson, presently confined at the Baltimore City Correctional Center ("BCCC"), filed a civil rights action pursuant to 42 U.S.C. § 1983, which as supplemented solely seeks injunctive relief mandating he be granted medical parole.[1] The case is now before the court on defendant's motion to dismiss (ECF No. 11), and plaintiff's opposition thereto. ECF No. 16. No hearing is needed to resolve this case. *See* Local Rule 105.6 (D. Md. 2011).

### Standard of Review

The first paragraph of defendant's memorandum accompanying its motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger*, 510 F.3d at 450. However, under Rule 12(b)(6), a court, in its discretion, may

---

[1] Plaintiff's motion for leave to proceed in forma pauperis (ECF No. 15) shall be granted, subject to assessment of partial filing fees.

consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[2]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

---

[2] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010). Here, plaintiff received sufficient notice that the motion might be construed as a summary judgment motion pursuant to the Clerk's April 1, 2013 letter (ECF No. 12), which conforms to the mandate of *see also Roseboro v. Garrison,* 528 F.2d 309(4th Cir. 1975).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Facts**

Plaintiff alleges that he suffers from multiple sclerosis ("MS"). He states that he asked a prison physician to sign medical parole papers, and implies that the doctor refused to do so because he was "not on the death bed." ECF No. 1, p. 3, § II.B.1. In support of his claim, plaintiff attached to his complaint various documents. The first document is a letter he wrote to attorney Laura Morton, in which he describes a fall he took in Westminster. He claimed the injuries he sustained as a result of the fall affected his eyesight, rendered him unable to run, skip, or jump, led to dizzy spells and imbalance and left him unable to stand on one leg or stand if his eyes are closed. *Id.,* p. 7.

Medical records attached to the complaint reveal that plaintiff was seen by a nurse on July 7, 2010, after he fell in the BCCC chow hall. *Id.,* p. 10. The nursing note reflects that plaintiff stated that he stumbles every day. *Id*. On October 4, 2010, plaintiff was seen by a physician's assistant ("PA") for a follow-up evaluation after he had some lab work done to

4

evaluate him for loss of balance. The PA's note reflects that plaintiff was in "[n]o apparent distress. Well nourished and well developed." *Id*. He showed no motor weakness, his balance and gait were intact, his coordination was intact, and his fine motor skills were normal. *Id*., p. 11.

On July 17, 2012, David Blumberg, the Chairman of the Maryland Parole Commission, responded to plaintiff's request for a medical parole by referring him to the Division of Correction's {"DOC") social work department. *Id.,* p. 9. Plaintiff, believing his symptoms are indicative of multiple sclerosis or muscular dystrophy, was scheduled to see a doctor at the Baltimore City Correctional Center "to approve medical parole due to health, safety, and welfare to be submitted to the Social Work Department." ECF No. 5, p. 5. On September 11, 2012, a social worker informed plaintiff that: "If you are actually recommended for a medical parole, the social work dept. will receive a referral from the doctor to complete a release plan for you. Then a social worker will see you for that." ECF No. 5, p. 6.

By letter dated February 10, 2013 to this court, plaintiff informed the court that he was scheduled to see a doctor at the BCCC on February 11, 2013, to ask for a letter approving him for a medical parole to be given to a social worker at the prison. ECF No. 6, p. 1. On March 7, 2013, this court received a letter from plaintiff indicating that he was taken to Bon Secours hospital on February 25, 2013, due to an elevated heart rate and that if his heart rate did not slow down, he would be given a medication called Gilenya, in pill form. ECF No. 8, pp. 2-3. He suggests that he has excellent health insurance that would cover his medication costs of $162.00 per day, that the prison will not likely pay for his medication,[3] and that he has pled "not guilty," presumably to the criminal charges for which he is currently in custody. *Id*., p. 3.

**Analysis**

---

[3] On April 16, 2013, plaintiff wrote indicating the prison had ordered a 30-day supply of his medication. ECF No. 17.

Defendant contends – correctly – that the Eleventh Amendment immunizes the State, its agencies, and state officials sued in their official capacities from suit in federal court unless the State has waived that immunity or Congress has exercised its power to abrogate the State's immunity.[4] *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974). This fact in and of itself does not end the court's inquiry, however, because the court must broadly construe the complaint and submissions of a self-represented litigant. *See White v. White,* 886 F. 2d 721, 722-723 (4th Cir. 1989).

The court must first ascertain whether plaintiff has been deprived of any right secured by the Constitution or federal law. *See Baker v. McCollan*, 443 U.S. 137 (1979). The due process clause of the fourteenth amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To maintain a due process claim, the claimant must first establish the existence of a protected property or liberty interest. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). If a protected property or liberty interest is identified, the question then becomes what process is due. *Morrissey*, 408 U.S. at 481.

Maryland's parole statutes and regulations do not create a legitimate expectation of parole release, and prisoners in Maryland therefore do not have a liberty interest in parole. *Swarthout v. Cooke*, 562 U.S. ___, 131 S.Ct. 859 (2011) (no liberty interest in parole unless arising from state statutes or regulations); *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1 (1979) (same); *Bryant v. Maryland*, 848 F.2d 492 (4th Cir. 1988) (Maryland prisoners do not have a liberty interest in parole). This remains the case after

---

[4] The Eleventh Amendment bars suit against the State for monetary relief as well as prospective injunctive or declaratory reliefl. *See Cory v. White,* 457 U.S. 85, 91 (1982); *Alabama v. Pugh,* 438 U.S. 781 (1978); *see also, Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139 (1993).

the Supreme Court's decision in *Sandin v. Connor*, 515 U.S. 472, 484 (1995), in which the Court held that in the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See McLaughlin-Cox v. Maryland Parole Commission*, 200 Md. App. 115, 24 A.3d 235, *cert. denied*, 422 Md. 354, 30 A.3d 195 (2011) (Maryland's statutory scheme does not create a liberty interest in parole).

Maryland provides no mandatory entitlement to consideration for medical parole. After reviewing a medical parole request, the Maryland Parole Commission may "(1) find the request to be inconsistent with the best interest of public safety and take no further action; or (2) request that department or local correctional facility personnel provide information for formal consideration of parole release." Md. Code Ann., Corr. Ser. § 7-309(d). If the Commission, in its discretion, decides to consider the prisoner for a medical parole, the Commission is then statutorily required to consider certain information, including (1) the inmate's medical information, to include: (i) a description of the inmate's condition, disease, or syndrome; (ii) a prognosis concerning the likelihood of recovery from the condition, disease, or syndrome; (iii) a description of the inmate's physical incapacity and score on the Karnofsky Performance Scale Index or similar classification of physical impairment; and (iv) a mental health evaluation, where relevant; (2) the inmate's discharge information, including: (i) availability of treatment or professional services within the community; (ii) family support within the community; and (iii) housing availability, including hospital or hospice care; and (3) case management information, including: (i) the circumstances of the current offense; (ii) institutional history; (iii) pending charges, sentences and other jurisdictions, and any other detainers; and (iv) criminal history information. *Id.,* § 7-309(e). The statutes relating to victim notification and opportunity to be

heard (*id.,* §§ 7-801 *et seq.*) apply to consideration for medical parole, but "[i]n cases of imminent death, time limits relating to victim notification and opportunity to be heard may be waived in the discretion of the Commission." *Id.,* § 7-309(h)(2). Although the Parole Commission is required to consider certain information in deciding whether to grant a medical parole, the ultimate decision whether to grant the medical parole is entirely within the discretion of the Commission, and the standard is exceptionally high. Only "[a]n inmate who is so debilitated or incapacitated by a medical or mental health condition, disease, or syndrome as to be physically incapable of presenting a danger to society may be released on medical parole at any time during the term of that inmate's sentence, without regard to the [parole] eligibility standards specified in § 7-301 of [the Correctional Services Article.]" *Id.,* § 7-309(b) (emphasis added).

Nothing in the record suggests that plaintiff actually has MS or any other neurological disorder, or that he is "so debilitated or incapacitated as to be physically incapable of presenting a danger to society." In any event, even if a prisoner is debilitated or incapacitated, the Commission is not required to grant a medical parole. Maryland's medical parole statute does not create a liberty interest in medical parole.

To the extent that plaintiff complains that the Commission violated a state statute or regulation, he fails to state a claim. If a state statute or regulation grants more procedural protection than the due process clause does, the state's failure to comply with state law does not amount to a federal due process violation. *See Riccio v. County of Fairfax*, 907 F.2d 1459 (4th Cir. 1990).

To the extent that plaintiff seeks to compel state corrections personnel to perform a duty owed by granting him medical parole, his claim likewise fails. Title 28 U.S.C. § 1361 grants the

8

district court original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or one of its agencies to perform a duty owed to a petitioner. The statute does not confer subject matter jurisdiction automatically; on the contrary, federal courts do "not have original jurisdiction to issue writs of mandamus . . . except as an ancillary remedy to be used in the exercise of jurisdiction already acquired." *Kivett v. Gathright*, 360 F. Supp. 102 (W.D. Va. 1973) (citing *Craig v. State of California*, 376 F.2d 583, 584 (7th Cir. 1967)); *see also Pearson v. U.S. Postal Service*, 2007 WL 624536 at * 1 (N.D. Fl., Feb. 22, 2007) (noting that 28 U.S.C. § 1361 does not provide an independent ground for subject matter jurisdiction). Here, plaintiff cannot establish entitlement because the defendant is a state – not a federal – entity.[5]

Defendant is entitled to summary judgment in this case. A separate order shall be entered in accordance with this Memorandum.

  April 30, 2013                                       /s/                              
(Date)                                                J. Frederick Motz
                                                      United States District Judge

---

[5] To establish jurisdiction under 28 U.S.C.§ 1361, plaintiff must demonstrate "the existence of the essential elements supporting a mandamus action," *First Fed. Sav. & Loan Ass'n. v. Baker*, 860 F.2d 135, 140 (4th Cir.1988), and must show that: (i) he has a clear right to the relief requested; (ii) the defendant has a clear duty to perform that act in question; and (iii) no other adequate remedy is available. *Id*. at 138; *see also In re Beard*, 811 F.2d 818 (4th Cir. 1986); *In re Braxton*, 258 F. 3d 250, 261 (4th Cir. 2001). The facts of this case reveal that even if this court could compel performance on the part of the state entity, plaintiff has failed to establish a clear right to the relief requested.